IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARLOS MERCED** : | |
|     **Plaintiff,** : | |
| : | **CIVIL ACTION NO. 10-3054** |
| **v.** : | |
| : | |
| **GEMSTAR GROUP, INC.,** : | |
| **ET AL.** : | |
|     **Defendants**. : | |

**MEMORANDUM**

**Tucker, J.**                                                                                         **November ___, 2011**

      Presently before the Court are Defendants' Margraf, S.P.A., Margraf Tiles, S.R.L., and Linea Marmo, S.P.A ("Margraf Defendants", collectively) Motions to Dismiss (Docs. 30, 31, 32), Defendant Gemstar Canada Inc.'s Response (Doc. 37), Defendant Zim Integrated Shipping Services, Ltd.'s Response (Doc. 38), Plaintiff's Response (Doc. 39), Defendants' SDS Global Logistics, Inc. and Security Deliver Service, Inc. Response (Doc. 44), and the Margraf Defendants' Reply (Doc. 50). Upon consideration of the parties' motions with exhibits and declarations, the Court will deny the Margraf Defendants' Motions to Dismiss for the reasons set forth below.

**I.**                                                              **BACKGROUND**

      This case arises from personal injuries suffered by Plaintiff Carlos Merced ("Merced") due to the alleged negligence of Defendants. This court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1391(a)(2). Defendants Margraf, S.P.A., Margraf Tiles, S.R.L., and Linea Marmo, S.P.A ("Margraf Defendants" collectively) move to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2).

On December 31, 2008, Plaintiff was working at Belfi Brothers & Co., Inc. ("Belfi Brothers") in Philadelphia, Pennsylvania, unloading marble slabs packed inside a shipping container by the Margraf Defendants. (Compl. Intro.) While Plaintiff was unloading the container, the marble slabs, which weighed thousands of pounds, crushed his leg causing severe and potentially permanent injuries including but not limited to a grade I open tibial fracture, leg pain, muscle atrophy, and loss of use and sensation of his lower extremity. (Compl. ¶ 62.) As a result of these injuries, Plaintiff has undergone surgery, therapy, treatment and rehabilitation, and diagnostic testing. (Compl.¶ 63.)

The Marble Slabs were produced, packaged, and loaded into a shipping container by Margraf, S.P.A., an Italian Corporation, who then distributed the container to Gemstar, a tile distributor in Ontario, Canada. (Doc. 39-5.) Gemstar then sold and distributed the marble slabs to Belfi Brothers in Philadelphia, where Plaintiff was injured. (Doc. 39-5.) An email from Michela Dalla Pozza, an agent of Margraf, S.P.A., specifically states that Margraf S.P.A. would "load and fix the materials in [the] best and [most] secure way possible" in a shipping container for transport to Philadelphia. (Doc. 39-5.) An invoice shows that Michela Dalla Pozza, and thus Margraf S.P.A., had actual knowledge that the products' final destination was Philadelphia. (Compl., Ex. B.)

Margraf, S.P.A. is the exclusive owner of a quarry in Italy that produces the specific injury-causing tile, which is called "fior di pesco," meaning "peach blossom" in English. (Doc. 39-5). Margraf, S.P.A. holds an active trademark registered with the United States Patent and Trademark Office for its "fior di pesco" tile. (Doc. 39-5.) Accordingly, all "fior di pesco" tile sold in the United States is a monopoly product of Margraf, S.P.A.'s Italian quarry. Records submitted by Plaintiff show that Margraf S.P.A. has shipped its tile products to at least seventy United States locations since 2007. (Doc. 39-2.) Of these shipments, at least three have been to

Pennsylvania, including a shipment in 2010 to Malvern, Pennsylvania worth over $19,000, and dozens have been to other states in the Northeast. (Doc. 30-11, 39-2.)

The instant action was commenced with the filing of the Complaint on August 10, 2010. (Doc. 5.) Plaintiff seeks damages, including compensatory damages, for the injuries sustained as a result of the accident, as well as all other relief deemed appropriate by the Court.

On September 17, 2010, Zim Integrated Shipping Co., Inc. ("Zim") filed a crossclaim for contribution and indemnity against all Co-Defendants. (Doc. 7.) On October 5, 2010, SDS Global Logistics, Inc. and Security Delivery Service, Inc. ("SDS Defendants" collectively) filed an answer to Zim's crossclaim. (Doc. 9.) On January 11, 2011, Gemstar filed answers to the Complaint and Zim's crossclaim, filed a crossclaim against all Co-Defendants for contribution and indemnity, and filed a motion to dismiss under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. (Docs. 21, 23.) On February 1, 2011, the Margraf Defendants filed a motion to dismiss the Complaint as well as Gemstar's and Zim's crossclaims under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. (Docs. 30, 31, 32.)

## II.      STANDARD OF REVIEW

A federal court sitting in diversity must conduct a two-step analysis to ascertain whether personal jurisdiction exists. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment. See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996).

Because Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process as defined under the Constitution of the United States, See 42 PA. CONS. STAT. ANN. § 5322 (b) (2011), federal law defines the parameters of this Court's in

personam jurisdiction.  See Vetrotex Certainteed Corp., 75 F.3d at 150.  The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  It is the burden of the plaintiff to prove that the defendant purposefully availed himself of the forum state.  To satisfy this burden, "at no point may the plaintiff rely on the bare pleadings alone," but rather must sustain its burden "through sworn affidavits or other competent evidence." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984); see Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990).

     To prove that the defendant purposefully availed itself of that state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  Personal jurisdiction pursuant to such contacts is known as specific jurisdiction.  Specific jurisdiction is invoked when a claim is "related to" or "arises out of" the defendant's contacts with the forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).  A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  What constitutes minimum contacts varies with the "quality and nature of the defendant's activity." Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation." Keeton v. Hustler, 465 U.S. 770, 775 (1984) (citation omitted).  Otherwise stated, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action.  United States Golf Ass'n v.

United States Amateur Golf Ass'n, 690 F.Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 417; Hansen, 357 U.S. at 253.

Assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting International Shoe Company v. Washington, 326 U.S. 310, 320 (1945)). See also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir.1998). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. World-Wide Volkswagen. Corp. v. Woodson, 444 U.S. 286, 292 (1980).

To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies. Id. Only in "rare cases [do the] 'minimum requirements inherent in the concept of "fair play and substantial justice" . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'" Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987) (Brennan, J., concurring) (alterations in original) (quoting Burger King Corp., 471 U.S. at 477-78)).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic general business" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 416. To establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state. Provident Nat'l Bank v. California Fed. Sav. &

Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. v. Watson, Ess, Marshall & Engas, 675 F.2d 587, 589 (3d Cir. 1982). A particular defendant may be dismissed from a lawsuit if the court cannot assert personal jurisdiction over the defendant pursuant to this standard. See FED. R. CIV. P. 12(b)(2).

### III. DISCUSSION

This Court is permitted to exercise personal jurisdiction over the Margraf Defendants. Pennsylvania's long-arm statute establishes specific jurisdiction over a defendant who "ship[s] . . . merchandise directly or indirectly into or through this Commonwealth," 42 PA. CONS. STAT. ANN. § 5322 (a)(1)(iii) (2011), and over a defendant who "[c]aus[es] harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth," 42 PA. CONS. STAT. ANN. § 5322 (a)(4), to the fullest extent permitted by the Constitution. 42 PA. CONS. STAT. ANN. § 5322 (b). The Margraf Defendants thus fall within the ambit of Pennsylvania's long-arm statute.

Next, the Court is faced with the issue of whether the exercise of jurisdiction would offend the Due Process Clause of the Fourteenth Amendment. See Vetrotex Certaineed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996). This is a two-step inquiry. First, the court must determine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Otherwise stated, the court must determine whether the defendant had sufficient minimum contacts with the forum state to establish personal jurisdiction. Second, the court must ensure that jurisdiction would be reasonable by addressing the issue of whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476

(quoting International Shoe Company v. Washington, 326 U.S. 310, 320 (1945)). See also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir.1998).

The Margraf Defendants are subject to the personal jurisdiction of this Court as they had sufficient minimum contacts with Pennsylvania, and jurisdiction in this forum is reasonable.

<u>The Margraf Defendants had Sufficient Minimum Contacts with Pennsylvania</u>

The evidence on the records leads the Court to conclude that the Margraf Defendants had sufficient minimum contacts with the Forum for the exercise of jurisdiction to be proper. The Margraf Defendants knowingly shipped their products into Pennsylvania on at least three occasions. By performing these acts for pecuniary gain, "defendant[s] purposefully availed [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp., 471 U.S. at 475. Additional shipments were made by the Margraf Defendants to New Jersey, New York, Maryland, and other neighboring states. By disseminating their monopoly product throughout Pennsylvania and many neighboring states, the Defendants obtained an economic benefit in Pennsylvania and could thus have "reasonably anticipate[d] being haled into court []here." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The Supreme Court has stated that "[w]hen a controversy . . . 'arises out of' a defendant's contacts with the forum, the . . . 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Thus, in cases of specific jurisdiction, it is crucial for the court to focus on these three factors. Keeton v. Hustler, 465 U.S. 770, 775 (1984) (citation omitted). Focusing on these factors in the present case militates toward jurisdiction. The litigation arises solely because the Margraf Defendants shipped their products to the forum; indeed, these activities were a but-for cause of Plaintiff's

injuries. The Margraf Defendant's activities, the forum, and the litigation are intimately related.

Accordingly, Pennsylvania has a "legitimate interest in holding [Defendants] answerable on a claim related to those activities." See Keeton, 465 U.S. at 776. Indeed, "a state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory . . . . because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection . . ." Id. at 776 (citations omitted). Jurisdiction is therefore proper.[1]

The Assertion of Personal Jurisdiction Comports with Fair Play and Substantial Justice

Because minimum contacts have been established, this Court must also consider whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting International Shoe Company v. Washington, 326 U.S. 310, 320 (1945)). See also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir.1998). In other words, the inquiry is whether jurisdiction in this forum would be reasonable. World-Wide Volkswagen. Corp. v. Woodson, 444 U.S. 286, 292 (1980). To determine reasonableness, a court considers the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (5) and the shared interest of the several States in furthering substantive social policies. Id. A consideration of these factors indicates that personal jurisdiction in this forum is reasonable.

---

[1] The Court notes that J. McIntyre Machinery v. Nicastro 131 S. Ct. 2780, 2785 (2011), a plurality opinion, is not analogous to the facts in the present matter. In J. McIntyre Machinery, the defendant never made a single shipment to the forum state. In the present case, the Margraf Defendants have made at least three-including the one giving rise to this litigation. Indeed, the plurality opinion in J. McIntyre Machinery further noted the unexceptional rule that jurisdiction may be appropriate where "the defendant can be said to have targeted the forum." 131 S. Ct. at 2788. In the present case, an invoice by Margraf, S.P.A. noted that the ultimate destination for its shipment was Pennsylvania. Thus, it can be said that the Margraf Defendants targeted the forum.

At the outset, the Court acknowledges that litigating in a foreign court is indeed a burden on the Margraf Defendants. This consideration, however, must yield to the other reasonableness factors in the present case. It would be fundamentally unjust to allow a foreign corporation to reap the economic benefits of conducting business in this forum while leaving an injured plaintiff remediless.

As for the second factor, Pennsylvania has a substantial interest in providing compensation for plaintiffs who are residents of this forum and who are injured in this forum by products that were knowingly shipped to this forum. Plaintiff in the present case is domiciled in this forum and the injury-causing products were shipped by the Margraf Defendants to this forum. Plaintiff's interest in obtaining convenient and effective relief supports a finding of jurisdiction for these same reasons. It would be unjust to force Plaintiff to litigate in Italy when the injury occurred in Pennsylvania at no choice by Plaintiff.

A consideration of the final two factors further indicate that jurisdiction is reasonable. The Court has noted that "the law should be such as to permit the injured party to join all parties in the normal distribution chain who may be liable, in a single law suit and in a single forum, as a matter of logical judicial economy as well as convenience." Lapeire v. World-Wide Volkswagen Corp., 698 F. Supp. 95, 99 (E.D.Pa. 1988). It makes little sense to allow the litigation to proceed against every defendant except the one that produced, loaded, and distributed its monopoly product to this forum; indeed, the Margraf Defendants are probably the most indispensible defendants in this litigation. A consideration of the final factor requires the Court to consider the interests of other nations in determining whether jurisdiction is reasonable. Although this Court realizes that litigating in a foreign judicial system imposes unique burdens upon a party, the Court sees no reason why this burden should be borne by the injured Plaintiff rather than the Margraf Defendants.

As the Supreme Court has stated, only in "rare cases [do the] 'minimum requirements inherent in the concept of "fair play and substantial justice" . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'"  <u>Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County</u>, 480 U.S. 102, 116 (1987) (Brennan, J., concurring) (alterations in original) (quoting <u>Burger King Corp.</u>, 471 U.S. at 477-78)).  This is not one of them.

                **BY THE COURT:**

                /s/ Petrese B. Tucker

                _____
                **Hon. Petrese B. Tucker, U.S.D.J.**