**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


CARLOS MERCED                          :        CIVIL ACTION
                                       :
                    Plaintiff,         :
                                       :
           v.                          :
                                       :
GEMSTAR GROUP, INC.                    :
GEMSTAR CANADA                         :        NO.:  2:10-cv-03054(PBT)
ZIM INTEGRATED SHIPPING                :
   SERVICES, LTD.                      :
SECURITY DELIVERY SERVICE, INC.        :
MARGRAF, S.P.A.                        :
LINEA MARMO, S.P.A.                    :
MARGRAF TILES SRL                      :


**<u>ORDER</u>**


    **AND NOW**, this _____ day of _____, 2015, upon consideration of the Motion for Partial Summary Judgment As To Punitive Damages filed by Defendant Gemstar Canada, Inc. (incorrectly named as "Gemstar Group, Inc." and "Gemstar Canada"), and any response thereto, it is hereby **ORDERED** and **DECREED** as follows:

- The Motion for Partial Summary Judgment As To Punitive Damages is **GRANTED**.

- The claim for punitive damages in the Complaint (Docket Entry 5) is hereby **STRICKEN**.

- All factual averments as to Gemstar in the Complaint (Docket Entry 5) of conduct that could give rise to an award of punitive damages, is hereby **STRICKEN**.

- Plaintiff Carlos Merced shall be **BARRED** at trial from making any argument in support of an award of punitive damages.

**BY THE COURT:**


**Petrese B. Tucker**
**Chief United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS MERCED | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GEMSTAR GROUP, INC. | : | NO.: 2:10-cv-03054(PBT) |
| GEMSTAR CANADA | : | |
| ZIM INTEGRATED SHIPPING | : | |
| SERVICES, LTD. | : | |
| SECURITY DELIVERY SERVICE, INC. | : | |
| MARGRAF, S.P.A. | : | |
| LINEA MARMO, S.P.A. | : | |
| MARGRAF TILES SRL | : | |

**DEFENDANT GEMSTAR CANADA, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES**

Defendant Gemstar Canada, Inc. (incorrectly named as "Gemstar Group, Inc." and "Gemstar Canada") (hereinafter "Gemstar"), by and through its attorneys, Marshall Dennehey Warner Coleman & Goggin, and pursuant to Federal Rule of Civil Procedure 56, hereby files this Motion for Partial Summary Judgment As To Punitive Damages, seeking the dismissal of all claims for punitive damages, the striking of all factual averments in support of such a claim, and a bar at trial from making argument in support of punitive damages.

This case arose upon Plaintiff Carlos Merced injuring himself at work. He was the foreman on a crew of Belfi Brothers, Inc., a stone installer involved in a construction project. At the time of the incident, an overseas cargo container carrying marble slabs had been delivered to Belfi Brothers in Philadelphia. The slabs were braced with wooden frames and cross-beams for overseas transport from the quarry in Italy to Philadelphia. As Mr. Merced was directing the dismantling of the wooden braces and cross-beams, a set of marble slabs fell and injured his leg.

Gemstar is a broker of stone materials for use in construction projects, and acted as such for the stone shipment in this case.  For purposes of this Motion, it is sufficient to state that the Margraf Defendants, collectively, were the quarry.  Belfi Brothers ordered 28 marble slabs through Gemstar.  Gemstar, from its Ontario offices, routed Belfi's order to Margraf and instructed Margraf as to where to direct the shipment.  Margraf packed the slabs into the container and delivered it to an overseas shipping company, where it made its way across the Atlantic to port in the United States, and eventually to Belfi Brothers in Philadelphia.  Mr. Merced led the crew that opened and began unloading the container, and was injured.

Mr. Merced has no evidence to support any claim for punitive damages against Gemstar in this case.  As addressed more fully in the accompanying filings, which are incorporated herein by reference, it is undisputed that Gemstar did not pack or direct the packing of the marble, nor instruct or have the responsibility for instructing the unpacking of the marble.  Mr. Merced is relying on the opinion of only one expert in this case, and he specifically testified that the conduct of Gemstar did not even play a role in *causing* the injuries of Mr. Merced.  Therefore, Gemstar is entitled to judgment as a matter of law on the issue of punitive damages.  *Id.*

2

**WHEREFORE**, Gemstar respectfully requests that this Motion be granted, and that judgment be entered in its favor as to all claims for and averments supporting claims for punitive damages.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By: _____*/s/ Vlada Tasich*_____

VLADA TASICH
Attorney ID. No. 88679
2000 Market Street
Suite 2300
Philadelphia, PA  19103
215-575-2640/575-2659
215-575-0856 (F)
vxtasich@mdwcg.com

Attorney for Defendants Gemstar Canada, Inc.
(Incorrectly identified as "Gemstar Group, Inc." and
"Gemstar Canada")

01/11388942.v1

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS MERCED | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GEMSTAR GROUP, INC. | : | NO.:  2:10-cv-03054(PBT) |
| GEMSTAR CANADA | : | |
| ZIM INTEGRATED SHIPPING | : | |
|   SERVICES, LTD. | : | |
| SECURITY DELIVERY SERVICE, INC. | : | |
| MARGRAF, S.P.A. | : | |
| LINEA MARMO, S.P.A. | : | |
| MARGRAF TILES SRL | : | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF DEFENDANT GEMSTAR CANADA, INC.'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

1.      Belfi Brothers (hereinafter "Belfi") is a natural stone installer and at all relevant times employed Plaintiff Carlos Merced.  Deposition of Mark Klemmer, attached hereto as Exhibit "A," at 16.

2.      Gemstar is a corporation organized and existing under the laws of Ontario, Canada, and has its principal place of business in Ontario Canada.  *See* Gemstar's Answer to Complaint, Doc. 21, ¶ 6.

3.      In this case Gemstar, located near Toronto, Canada, acted as a broker for the sale of marble slabs to Belfi.  Deposition of Plaintiff's Liability Expert Fred Hueston, attached hereto as Exhibit "C," at 25; *see also* Deposition of Alberto Tezza, attached hereto as Exhibit "B," at 29 (By Plaintiff's counsel: "Q. [W]hat type of products was [*sic*] being ordered through Gemstar? A. He ordered the slabs . . . .").

4.    The marble was quarried in Italy by the Margraf Defendants (hereinafter "Margraf").  Alberto Tezza Dep., Exhibit "B" hereto, at 23–25.

5.    Margraf packed the marble slabs into an overseas container, and braced it with wooden frames.  *Id.* at 41 & 45–46.

6.    Gemstar did not participate in loading and bracing the marble.  *Id.*

7.    Gemstar did not participate in receiving the marble in Philadelphia, or in opening the container and unloading the marble.  Klemmer Dep., Exhibit "A" hereto, at 25 & 26.

8.    Belfi Bros. has been in the stone industry for over 100 years, and routinely handles stone, including marble slabs, as a part of its business.  *See* Hueston Dep., Exhibit "C," at 53.

9.    It was always the intent of Belfi Bros. to have its own employees unload the marble slabs.  *Id.* at 48.

10.    Mr. Merced was in charge of the Belfi crew unloading the container.  *Id.* at 50 & 58; Deposition of Robert Rounay, Exhibit "F," at 31–32.

11.    Mr. Merced was responsible for his own safety, and that of the employees working under his direction.  Hueston Dep., Exhibit "C," at 58.

12.    That included determining what equipment was needed to safely unload the container.  *Id.*

13.    There is no evidence in the record that Mr. Merced ever expressed concern about how the container was packed or doubt about Belfi's ability to unpack it.  *See id.* at 51; Rounay Dep., Exhibit "F," at 18.

14.    The container with the marble slabs was an open-top container.  Rounay Dep., Exhibit "F," at 36.

2

15.     Mark Klemmer, of Belfi, received from Gemstar a photograph of the marble slabs in their packed state at Margraf before the container was sealed for overseas shipment, and showed it to Mr. Merced weeks before the container arrived in Philadelphia.  Klemmer Dep., Exhibit "A" hereto, at 33–34, 35.

16.     Mr. Merced's own expert confirms that testimony.  *See* Hueston Dep., Exhibit "C," at 50.

17.     That photograph is attached hereto as Exhibit "D."

18.     Mr. Hueston confirmed that receipt of that photograph by Mr. Merced was helpful in Mr. Merced's formulation of a plan to unload the container.  *See* Hueston Dep., Exhibit "C," at 51–52.

19.     He also stated that seeing the actual container "live" would be a benefit to forming a plan to unpack the container.  *Id.* at 52.

20.     Specifically:

Q.  Would you want to actually see the container as packed live?

A.  Did you say live?

Q.  Yes. In person.

A.  Well that would be ideal, but that's not always practical.

*Id.*

21.     There is no evidence that Mr. Merced, or anyone from Belfi, expressed any doubt how the container should be unpacked or about Belfi's ability to do so.  *Id.* at 51.

22.     Mr. Merced had retained two experts in this case, and disclosed their names and reports to the defense, pursuant to Federal Rule of Civil Procedure 26(a)(2).

23.     However, Mr. Merced has abandoned one of them, and is proceeding only with the assistance of the other.

24.     The expert Plaintiff is relying on is Fred Hueston.

25.     Mr. Hueston has been presented as an expert in the area of safe handling of stone materials.  Hueston Dep., Exhibit "C" hereto, at 31.

26.     Mr. Hueston has only issued one report in this case, and that report contains all of his opinions and conclusions.  *Id.* at 37.

27.     In it, he references Gemstar in only a single sentence: "Also Gemstar should have instructed the packers and made them aware of what equipment was available to unload the bundles/slabs."  *See* Report of Fred Hueston, attached hereto as Exhibit "E," at 3.

28.     Mr. Hueston is only offering that one conclusion against Gemstar:

Q.  Now if you can turn to the third page of your report.  There is a section there, Conclusions?

A.  Correct.

. . . .

Q.  In the second sentence of that paragraph you state, also Gemstar should have instructed the packers and made them aware of what equipment was available to unload the bundles/slabs.

A.  Yes.

. . . .

Q.  Is that the only conclusion that you have reached as to Gemstar based on your review of the evidence in this case?

A.  I believe so, yes.

Q.  You're not offering any other opinions as to Gemstar in this manner?

A.  No.

Q.  No, I'm not correct?

A.  No.  I'm sorry.  No, I'm not offering any additional opinions.

Hueston Dep., Exhibit "C," at 39–40.

4

29.     It is **not** Mr. Hueston's opinion that Gemstar's conduct caused the subject accident.  *Id.* at 47–48.

30.     He testified:

> Q.  Mr. Hueston, am I correct that you're not giving an opinion in this case that Gemstar's conduct actually caused his incident to take place; is that right?
>
> A.  I'm not sure what you mean by their—
>
> Q.  Do you need the question read back?
>
> A.  Could you read back the question?
>
> (Question read back.)
>
> BY MR. TASICH:
>
> Q.  I'm not right?
>
> A.  No.  I'm sorry.  I don't think their conduct per se caused the accident.
>
> Q.  Gemstar's?
>
> A.  Correct.

*Id.*

31.     All of Mr. Hueston's other observations, opinions, and conclusions relate to the manner in which Margraf packed the marble slabs.  *See* Report of Fred Hueston, Exhibit "E."

32.     Belfi Bros. owned a forklift with which to unload marble slabs at the time this shipment was being unpacked.  Rounay Dep., Exhibit "F," at 38-42.

33.     Belfi Bros. had access to a crane with which to unload marble slabs at the time this shipment was being unpacked.  *Id.* at 42–43.

34.     There is no evidence in this case that any act or omission of Gemstar's was an intentional, willful, wanton, knowing, or reckless act or omission that played any role in causing the incident in which Mr. Merced was injured.

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

By:          */s/ Vlada Tasich*
            VLADA TASICH
            Attorney ID. No. 88679
            2000 Market Street
            Suite 2300
            Philadelphia, PA  19103
            215-575-2640/575-2659
            215-575-0856 (F)
            vxtasich@mdwcg.com

            Attorney for Defendant Gemstar Canada, Inc. (incorrectly identified as "Gemstar Group, Inc." and "Gemstar Canada")

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CARLOS MERCED : CIVIL ACTION
:
        Plaintiff, :
:
      v. :
:
GEMSTAR GROUP, INC. :
GEMSTAR CANADA :
ZIM INTEGRATED SHIPPING :
  SERVICES, LTD. :
SECURITY DELIVERY SERVICE, INC. :
MARGRAF, S.P.A. :
LINEA MARMO, S.P.A. :
MARGRAF TILES SRL : NO.:  2:10-cv-03054(PBT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT GEMSTAR CANADA, INC.'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Gemstar Canada, Inc. (incorrectly named as "Gemstar Group, Inc." and "Gemstar Canada") (hereinafter "Gemstar"), by and through its attorneys, Marshall Dennehey Warner Coleman & Goggin, hereby submits the instant Memorandum of Law in support of its Motion for Partial Summary Judgment.

      **I.**        **Standard**

A motion for summary judgment should be granted when there is no dispute as to any genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[S]ummary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party."  *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II.        Argument

The sole Count of the Complaint is one of negligence.  Doc. 5.  "A cause of action in negligence requires a showing of four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage."  *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011) (citation omitted).  "The mere occurrence of an accident does not establish negligent conduct."  *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).  "Rather, the plaintiff has the burden of establishing, by a preponderance of the evidence, that the defendant engaged in conduct that deviated from the general standard of care expected under the circumstances, and that this deviation proximately caused actual harm."  *Id.* (citation omitted).

To support a claim for punitive damages, the facts must paint a picture of conduct that is far more egregious than simply negligent.  Punitive damages are only "available when 'a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct.'"  *Mitchell Partners, L.P. v. Irex Corp.*, 656 F.3d 201, 214 (3d Cir. 2011) (quoting *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704–705 (Pa. 1991)).[*]  Indeed, "negligence and wanton misconduct are not one and the same."  *Bellefonte Area Sch. Dist. v. Modernfold Indus.*, 24 Pa. D. & C.3d 303, 309–310 (Centre Cnty. 1981).  "Wanton misconduct is something different from negligence however gross—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor.  It exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the

---

[*] "In a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law." *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 278 (1989).

perpetration of the wrong." *Stewart v. Pittsburgh Railways Co.*, 108 A.2d 767, 768 (Pa. 1954).

Pennsylvania law "makes it clear that punitive damages are an 'extreme remedy' available in

only the most exceptional matters.  Punitive damages may be appropriately awarded only when

the plaintiff has established that the defendant has acted in an outrageous fashion due to either

'the defendant's evil motive or his reckless indifference to the rights of others.'" *Phillips v.

Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (citations omitted).  To succeed on such a claim,

a plaintiff must establish that the defendant knew of and appreciated the specific risk that harmed

the plaintiff.  *See id.*, 883 A.2d at 445–446, and cases cited.  "The only purpose of punitive

damages is to deter outrageous conduct.  It is impossible to deter a person from taking risky

action if he is not conscious of the risk." *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1098

n.12 (Pa. 1985).

Mr. Merced cannot establish the necessary factual predicate for a punitive damages claim

against Gemstar.  As stated above, Belfi contacted Gemstar from afar about engaging its services

to obtain a shipment of stone.  The chosen stone was Italian marble, and was to be shipped direct

from Italy, per Belfi's express request.  From its offices in Toronto, Gemstar arranged shipping

routes and days for the stone to be delivered from Margraf's quarry in Italy to Belfi in

Philadelphia.

Despite the breadth of the Complaint, as this case has developed in discovery, the claims

of Mr. Merced have crystallized.  Now, the only theory of liability against Gemstar in this case is

that it failed to advise Margraf what equipment Belfi Bros. had, so that Margraf could pack the

marble slabs in a way that Belfi Bros. could safely unload it.  *See* Report of Fred Hueston,

Exhibit "E" hereto, at 3 ("Also Gemstar should have instructed the packers and made them aware

of what equipment was available to unload the bundles/slabs.").  That is the only opinion Mr.

Merced's sole expert will offer at trial against Gemstar:

> Q.  Now if you can turn to the third page of your report.  There is a section there, Conclusions?
>
> A.  Correct.
>
> . . . .
>
> Q.  In the second sentence of that paragraph you state, also Gemstar should have instructed the packers and made them aware of what equipment was available to unload the bundles/slabs.
>
> A.  Yes.
>
> . . . .
>
> Q.  Is that the only conclusion that you have reached as to Gemstar based on your review of the evidence in this case?
>
> A.  I believe so, yes.
>
> Q.  You're not offering any other opinions as to Gemstar in this manner?
>
> A.  No.
>
> Q.  No, I'm not correct?
>
> A.  No.  I'm sorry.  No, I'm not offering any additional opinions.

Hueston Dep., Exhibit "C," at 39–40.

Gemstar vigorously disputes that it had a duty either to make itself knowledgeable of Belfi Bros.' equipment, or to inform Margraf of the same.  Both of these entities are sophisticated and experienced in their respective trades.  And further, at trial, Gemstar will be able to establish through from Mr. Merced's own expert that Gemstar's conduct played no role in causing the marble slabs to fall and injure Mr. Merced.  *Cf.* Hueston Dep., Exhibit "C," at 48 ("No.  I'm sorry.  I don't think their conduct per se caused the accident.").  And further, Mr. Heuston will be forced to acknowledge the undisputed evidence that Gemstar did provide Belfi

with advanced notice (the photograph) of how the marble was packed; that Mr. Merced was in the "ideal" situation of seeing the container in person before beginning to unpack it; that Mr. Merced was in charge of the crew unpacking the container; that Mr. Merced was in charge of determining what equipment was necessary to safely unpack the container; that there is no evidence that Mr. Merced or any other Belfi employee ever expressed concern about how the marble was packed in the container; and that there is no evidence that Mr. Merced or any other Belfi employee ever expressed doubt about their ability to safely unpack the container.  Hueston Dep., Exhibit "C," at 49–51 & 58.

But regardless, even if it is accepted for sake of argument that Gemstar's conduct fell short of an enforceable legal duty, and the sole theory of liability of Mr. Heuston is proven true—that Gemstar should have, but did not, advise Margraf that Belfi Bros. had a forklift and access to a crane to unload marble slabs, Hueston Report, Exhibit "E," at 3; Hueston Dep., Exhibit "C," at 39–40—even if that comes to pass, there is no basis in the record of this case to allow a claim for punitive damages, as that is not evidence of a willful or wanton disregard for Mr. Merced's safety.  Absent evidence that "a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct," then punitive damages are unavailable.  *Mitchell Partners, L.P.*, 656 F.3d at 214 (quoting *SHV Coal, Inc.*, 587 A.2d at 704–705).  The "extreme remedy" of punitive damages that the law permits "in only the most exceptional matters," *Phillips*, 883 A.2d at 445, is inappropriate in this case, because Mr. Merced cannot show the jury any proof that Gemstar acted with an "evil motive or . . . reckless indifference to the rights of others."  *Id.*; *see also Stewart*, 108 A.2d at 768 ("Wanton misconduct is something different from negligence however gross—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor.  It exists where the

5

danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.").

The Pennsylvania Supreme Court has carefully instructed when punitive damages may be available in a negligence case:

> We do not dispute that a showing of ordinary negligence is not enough to warrant punitive damages. And so, a jury cannot be instructed that, having found negligence, an award of punitive damages is appropriate. But, neither is there anything in law or logic to prevent the plaintiff in a case sounding in negligence from undertaking the *additional burden* of attempting to prove, as a matter of damages, that the defendant's conduct not only was negligent but that the *conduct was also outrageous*, and warrants a response in the form of punitive damages.

*Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005) (emphasis added). Because Mr. Merced, even on his best day, can only hope to demonstrate negligence on the part of Gemstar, punitive damages should not be available at the time of trial in this case.

### III. Conclusion

Based on the foregoing, Gemstar requests that this Court grant this Motion, and enter partial summary judgment in its favor on all allegations and claims for an award of punitive damages.

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**


By:      _/s/ Vlada Tasich_____
VLADA TASICH
Attorney ID. No. 88679
2000 Market Street
Suite 2300
Philadelphia, PA  19103
215-575-2640/575-2659
215-575-0856 (F)
vxtasich@mdwcg.com

Attorney for Defendants Gemstar Canada, Inc.
(Incorrectly identified as "Gemstar Group, Inc." and
"Gemstar Canada")

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS MERCED | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GEMSTAR GROUP, INC., et al. | : | NO.:  2:10-cv-03054(PBT) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served upon all parties listed below a true and correct copy of

Gemstar Canada, Inc.'s Motion For Partial Summary Judgment As To Punitive Damages in the

above-captioned matter by electronic filing.

John A. Mattiacci, Jr.
Law Offices of John T. Dooley, LLC
5434 King Avenue @ Route 38 East
Suite 202
Pennsauken, NJ  08109

James F. Ryan
Schwabenland & Ryan, P.C.
995 Old Eagle School Road
Suite 306
Wayne, PA 19087


BY:  _____*/s/ Vlada Tasich*_____
VLADA TASICH

**Date:**