IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **CARLOS MERCED** | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 10-3054 |
| | : | |
| **GEMSTAR GROUP, INC. ET AL.,** | : | |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

Tucker, C.J.                                                                                                    March 13, 2015

      Presently before the Court is Defendant Gemstar Canada, Inc.'s ("Gemstar") Motion for Summary Judgment (Doc. 93), Plaintiff Carlos Merced's Response in Opposition (Doc. 98), and Defendant Gemstar's Reply in Support of Motion for Summary Judgment (Doc. 101). Upon careful consideration of the parties' briefs, exhibits, and all other papers herein, and for the reasons set forth below, this Court will ***deny*** Defendant's Motion for Summary Judgment.

**FACTUAL BACKGROUND**

      This case arises from personal injuries suffered by Plaintiff Merced while working as a shop foreman for Belfi Brothers & Co., Inc. ("Belfi Brothers") in Philadelphia, Pennsylvania on December 31, 2008. Belfi Brothers installs ceramic and stone products in commercial construction projects.

      Belfi Brothers ordered marble slabs from Defendant Gemstar, a company incorporated under the laws of Ontario, Canada with its principal place of business in Ontario, Canada. Compl. ¶ 2. Gemstar is a broker of stone and marble materials and it imports, exports, and supplies stone and marble products. <u>Id.</u> ¶ 3. Gemstar routed Belfi's order to Margraf, S.P.A.

1

("Margraf"), an Italian corporation that sells and supplies stone and marble products. Id. ¶¶ 38-39. Margraf quarried the marble slabs at issue and packed them into an open-top overseas container braced with wooden frames. Def.'s Statement of Undisputed Facts ¶¶ 6, 14. Gemstar did not load or brace the marble slabs. Id. ¶ 7. The marble slabs were shipped from Italy to Belfi Brothers in Philadelphia where Mr. Merced was seriously injured while unloading them. The marble slabs, which weighed thousands of pounds, collapsed and crushed Mr. Merced's legs, causing severe and permanent injuries. Compl. Intro.

Mr. Merced brought the instant action against all defendants to this action alleging negligence. Gemstar moves for summary judgment claiming that it is not subject to the personal jurisdiction of this Court. Gemstar previously filed a summary judgment motion for lack of personal jurisdiction on June 3, 2011 (Doc. 47), which this Court denied in an Order dated December 2, 2011 (Doc. 56). Gemstar now argues that after full discovery, the facts that this Court relied on in its December 2, 2011 Order are not supported by the evidence of record. Mem. of Law in Support of Gemstar Canada's Mot. for Summ. J. at 2. Specifically, Gemstar contends that it never came into physical contact with the shipping container containing the marble slabs at issue, which Margraf had packaged, loaded, and shipped. Id. Instead, Gemstar avers that Margraf directly shipped the container from a quarry in Italy to Belfi Brothers in Philadelphia. Id.; see also Tezza Dep. 83:24-84:16, Mar. 19, 2013; Pl.'s Resp. in Opp'n, Ex. 5. Mr. Merced does not dispute these facts.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" issue exists where there is a "sufficient evidentiary basis on which a

reasonable jury could return a verdict for the non-moving party." Byrne v. Chester Cnty. Hosp., No. 09-889, 2012 WL 410886, at *2 (E.D. Pa. Sept. 19, 2012) (citing Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). "A factual dispute is 'material' if it might affect the outcome of the case under governing law." Id. All factual doubts should be resolved and all reasonable inferences drawn in favor of the nonmoving party. Torretti v. Main Line Hosp., Inc., 580 F.3d 168, 172 (3d Cir. 2009) (citing DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir. 2007)). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). The movant is responsible for "informing the court of the basis for its motion for summary judgment and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." Byrne, 2012 WL 410886, at *2 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

## DISCUSSION

In its Motion for Summary Judgment, Gemstar contends that it is not subject to the personal jurisdiction of this Court and that it is not liable for Mr. Merced's injuries since it did not cause those injuries.

### A.  Personal Jurisdiction Over Defendant Gemstar

Federal Rule of Civil Procedure 4(k)(1)(A)[1] authorizes federal courts to exercise personal jurisdiction over non-resident defendants to the extent permissible by the forum state's law. To ascertain whether personal jurisdiction exists, federal courts follow a two-step analysis. First, the

---

[1] Federal Rule of Civil Procedure 4(k)(1)(A) states, "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

3

court determines if jurisdiction is proper under the forum state's long-arm statute. Second, the court decides if the exercise of personal jurisdiction over the defendant comports with due process under the Fourteenth Amendment of the United States Constitution. Ward v. L.N.I., Ltd., No. 90-7879, 1991 U.S. Dist. LEXIS 13614, at *4 (E.D. Pa. Sept. 26, 1991).

In the instant matter, this Court looks to Pennsylvania's long-arm statute, 42 Pa. C.S.A. § 5322, to determine whether this Court can assert personal jurisdiction over Gemstar. Pennsylvania's long-arm statute extends to any person who acts directly or by an agent: 1) "in this Commonwealth for the purpose of thereby realizing pecuniary benefit . . ."; 2) to ship "merchandise directly or indirectly into or through this Commonwealth"; or 3) contracts "to supply services or things in this Commonwealth." 42 Pa. C.S.A. § 5322(a)(1)(ii), (iii) and (a)(2). The statute permits the Court "to exercise personal jurisdiction over non-resident defendants to the constitutional limits of the due process clause of the fourteenth amendment." Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992) (citing N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689-90 (3d Cir. 1990)).

A court may exercise specific or general jurisdiction over a defendant. In this case, the parties do not dispute that this Court lacks general jurisdiction over Gemstar.[2] Accordingly, the Court will focus its analysis on whether it can exercise specific jurisdiction over Gemstar.

Specific jurisdiction applies "when the plaintiff's 'claim is related to or arises out of the defendant's contacts with the forum.'" Id. (quoting Dollar Sav. Bank v. First Sec. Bank, 746 F.2d 208, 211 (3d Cir. 1984)). Specifically, the court examines whether the defendant purposefully established sufficient "minimum contacts" in the forum state such that "maintenance of the suit

---

[2] General jurisdiction over foreign corporations may be asserted "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). Here, Mr. Merced does not allege that Gemstar's contacts with Pennsylvania are continuous and systematic.

4

does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Court will analyze each of these requirements below.

   *1. Gemstar's Minimum Contacts with Pennsylvania*

To assess the sufficiency of a defendant's minimum contacts, courts focus on the relationship between the defendant, the forum, and the litigation. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The "defendant *himself*" must create contacts with the forum state, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), "such that [the defendant] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The cause of action must flow from the defendant's contacts and the defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319). However, the defendant's physical presence in the forum state is not necessary to establish jurisdiction. Burger King, 471 U.S. at 476.

In this case, Gemstar contends that it has not established the requisite minimum contacts with this forum state to enable this Court to assert personal jurisdiction over Gemstar. See Mem. of Law in Support of Def.'s Mot. for Summ. J. at 6. To support its argument, Gemstar avers that the sale of the marble slabs to Belfi Brothers was Gemstar's sole transaction involving Pennsylvania. Gemstar claims that this was an atypical transaction, which cannot be construed as an effort on its part to reach a new customer base. Id. at 8. Gemstar urges the Court to find that its contact with Pennsylvania was "fortuitous," "random," and "attenuated," and consequently, insufficient to establish personal jurisdiction. Id. at 10 (quoting Burger King, 471 U.S. at 475).

Gemstar relies on Burger King, asserting that for contacts arising from interstate contractual obligations, jurisdiction will *only* exist where the defendant reaches out beyond one state and creates "continuing relationships and obligations" with citizens of another state. Id. at 7 (quoting Burger King, 471 U.S. at 472).

Gemstar misleadingly refers to Burger King, however. When a foreign defendant establishes contacts from interstate contractual obligations, a court's exercise of specific jurisdiction does not *exclusively* depend on the defendant's creation of continuing interstate relationships and obligations. Instead, the Supreme Court in Burger King "emphasized" that foreign defendants in those contexts will be "subject to the regulations and sanctions" of the forum state. 471 U.S. at 473. The Supreme Court explained that a state "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state-actors," in particular, those out-of-state actors who "purposefully direct" their activities to the forum state's residents. Id. The Supreme Court further stated:

> [W]here individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

Id. at 473-74 (citations omitted)). Thus, Burger King underscores the importance of the "purposeful availment" prerequisite to asserting specific jurisdiction. The defendant himself must have created a substantial connection with the forum, which may be found "where the defendant deliberately has engaged in significant activities within a State, *or* has created continuing obligations between himself and residents of the forum." Id. at 474 (citations and quotations omitted) (emphasis added). As such, a court can assert jurisdiction over a defendant who has established contractual relations with the state's residents when that defendant has

6

established a substantial connection with the forum through the defendant's deliberate and significant activities.

The Court agrees with Mr. Merced's assertion that Gemstar established sufficient contacts with Pennsylvania and engaged in significant in-state activities for the proper exercise of specific jurisdiction here. Firstly, pursuant to 42 Pa. C.S.A. § 5322(a)(2), this Court has adequate basis to exercise personal jurisdiction over a foreign defendant who "contract[s] to supply services or things in this Commonwealth." Gemstar indisputably entered into an agreement with Belfi Brothers to supply the marble slabs at issue. This satisfies the Court's first basis for personal jurisdiction. Secondly, this Court can assert personal jurisdiction over Gemstar because Gemstar sold the marble slabs to Belfi Brothers with the purpose of financially benefitting from its transaction. See 42 Pa. C.S.A. § 5322(a)(1)(ii) (stating that jurisdiction may be exercised over a person who acts "in this Commonwealth for the purpose of thereby realizing pecuniary benefit . . ."); Pl.'s Resp. in Opp'n, Ex. 2; see also Ward, 1991 U.S. Dist. LEXIS 13614, at *5-6 (concluding that the court could exercise personal jurisdiction over a foreign defendant who derived financial benefit from contracting for the sale of rare coins in the forum state).

Finally, as previously stated, a single shipment suffices to subject an out-of-state defendant to personal jurisdiction under Pennsylvania's long-arm statute. See 42 Pa. C.S.A. § 5322(a)(1)(iii) (stating that jurisdiction may be extended to any person who acts directly or by an agent to ship "merchandise directly or indirectly into or through this Commonwealth"); see, e.g., Ward, 1991 U.S. Dist. LEXIS 13614, at *5 (concluding that the court had personal jurisdiction over an out-of-state defendant who shipped rare coins to Pennsylvania residents; "A single shipment is sufficient to subject a foreign corporation to personal jurisdiction under 42 Pa.

C.S.A. § 5322(a)(1)(iii)."); <u>Stokes v. Indus. Shredding Sys.</u>, No. 04-0881, U.S. Dist. LEXIS 173, at *2 (E.D. Pa. Jan. 10, 2005) ("The shipment of parts . . . into Pennsylvania constitutes the transaction of business sufficient to confer jurisdiction."); <u>Shaffer v. South State Mach.</u>, No. 97-948, 1997 U.S. Dist. LEXIS 22023, at *6-7 (W.D. Pa. Sept. 25, 1997) (concluding that a foreign corporation's contacts were sufficient to exercise specific jurisdiction where the corporation contracted with a Pennsylvania company and directly shipped a defective product to Pennsylvania).

Here, Gemstar acted as a broker for the sale of marble slabs to Belfi Brothers in Pennsylvania. Def.'s Statement of Undisputed Material Facts ¶ 4; Pl.'s Resp. in Opp'n, Exs. 2 and 5. Gemstar contacted Margraf in Italy, which quarried the marble slabs at issue and packed and shipped them to Belfi Brothers. Def.'s Statement of Undisputed Material Facts ¶¶ 5-6. Although, Gemstar did not itself directly ship the marble slabs, it arranged for Margraf to ship them in order to fulfill its contract with Belfi Brothers. <u>See</u> Pl.'s Resp. in Opp'n, Ex. 5. By directly contracting for the sale of marble slabs with Belfi Brothers in Pennsylvania, deriving economic benefit from this transaction, and having the marble slabs shipped to Pennsylvania, Gemstar established sufficient contacts with Pennsylvania to subject it to the personal jurisdiction of this Court.

### 2. *The Assertion of Personal Jurisdiction Comports with Fair Play and Substantial Justice*

Next, the Court will examine whether its exercise of personal jurisdiction over Gemstar offends traditional notions of fair play and substantial justice. <u>See</u> <u>Int'l Shoe</u>, 326 U.S. at 316. To do so, the Court must consider the following factors:

1) the burden on the defendant;
2) the forum State's interest in adjudicating the dispute;
3) the plaintiff's interest in obtaining convenient and effective relief;

> 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and
>
> 5) the shared interest of the several States in furthering fundamental substantive social policies.

World-Wide Volkswagen Corp., 444 U.S. at 292.

To start, Gemstar avers that defending this action in this jurisdiction imposes a great burden upon it. Mem. of Law in Support of Gemstar Canada's Mot. for Summ. J. at 11. Gemstar's offices, personnel, and relevant resources are in Toronto, Canada; individuals who packaged and delivered the marble slabs are based in Italy; and individuals who unloaded the container and witnessed the accident are in Philadelphia, Pennsylvania. While the Court acknowledges that litigating this action in a foreign legal system may in fact burden Gemstar, the Court must weigh the other factors in assessing the reasonableness and fairness in extending personal jurisdiction over a foreign defendant.

As for the second and third factors, Pennsylvania and Mr. Merced both have substantial interests in this Court's exercise of jurisdiction over Gemstar. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102, 114 (1987). Gemstar deliberately created contacts with Pennsylvania through its own actions and benefitted from its contractual relationship with Belfi Brothers. Permitting Gemstar to escape accountability for its actions in Pennsylvania while allowing it to reap the benefits of those same actions would be unjust. See Burger King, 471 U.S. at 474 ("[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."). Pennsylvania has a legitimate interest in adjudicating this dispute and in providing its residents with a forum for redressing the wrongs inflicted by foreign actors that transact with its residents and knowingly ship products to

this state. See id. at 473. Additionally, Mr. Merced is domiciled in Pennsylvania and the injury occurred in Pennsylvania. Mr. Merced, therefore, has an interest in obtaining convenient and effective relief in Pennsylvania.

The final two factors also weigh in favor of Mr. Merced. In this case, these final factors call for the Court to consider other nations' interests and the international context of this matter when determining whether jurisdiction is reasonable. See Asahi, 480 U.S. at 115. A court should be careful to evaluate the burden placed on the foreign defendant against the interests of the plaintiff and the forum state. Id. The Court also notes that the law should "permit the injured party to join all parties in the normal distributive chain who may be liable, in a single law suit and in a single forum, as a matter of logical judicial economy as well as convenience." Lapeire v. Volkswagen AG, 698 F. Supp. 95, 97 (E.D. Pa. 1988). Here, Mr. Merced brings this action against multiple defendants. This Court previously determined that it may exercise jurisdiction over the other defendants in this action. Although litigating this case in a foreign jurisdiction may burden Gemstar, the substantial interests of Mr. Merced and Pennsylvania in having this Court exercise personal jurisdiction over Gemstar outweighs the burden borne by Gemstar.

Through its transactions in Pennsylvania, Gemstar purposefully availed itself of the privilege of conducting activities within Pennsylvania, thus invoking the benefits of the laws of this state. This Court is satisfied that exercising jurisdiction over Gemstar comports with traditional notions of fair play and substantial justice. For the foregoing reasons, the Court concludes that Gemstar is subject to the personal jurisdiction of this Court.

### B. Cause of Mr. Merced's Injuries

Gemstar next urges this Court to enter summary judgment in its favor, maintaining that its conduct did not cause Mr. Merced's injuries. Instead, Gemstar blames Mr. Merced for causing

his own injuries when unloading the marble slabs from the open-top container. Mem. of Law in Support of Gemstar Canada's Mot. for Summ. J. at 14. The Court rejects Gemstar's arguments and finds that there are genuine issues of material fact that Gemstar's actions or inactions caused or increased the risk of harm to Mr. Merced.

Mr. Merced brings a negligence action against Gemstar. To demonstrate negligence, a plaintiff is required to show: 1) the defendant had a duty to conform to a certain standard of conduct; 2) the defendant breached that duty; 3) such breach caused the injury in question; and 4) the plaintiff incurred actual loss or damage. Pyeritz v. Commonwealth, 32 A.3d 687, 692 (Pa. 2011). "Under Pennsylvania law, a defendant is not relieved from liability because another concurring cause is also responsible for producing injury." Amco Ins. Co. v. Emery & Assocs., 926 F. Supp. 2d 634, 646-47 (W.D. Pa. 2013). "Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm." Id. at 647 (citing Hamil v. Bashline, 392 A.2d 1280, 1286 (Pa. 1978)); see also Lempke v. GE, No. 11-1237, 2012 U.S. Dist. LEXIS 3379, at *9 (W.D. Pa. Jan. 11, 2012).

In the present case, Mr. Merced has introduced sufficient evidence that Gemstar's omissions or failure to act increased the risk of harm to him. First, Mr. Merced's expert witness, Dr. Fred Hueston, testified in his deposition that, in his experience, brokers who supervise the packaging of slabs play the role of observing the safe shipment of the slabs and establishing that their client possesses the proper equipment to safely unload the slabs. Hueston Dep., 115:15-117:18, Oct. 24, 2013. Dr. Hueston also stated that he had not seen any evidence that Gemstar inquired about the equipment that Belfi Brothers had to unload the marble slabs. Id. at 117:19-

23. In his expert report, Dr. Hueston opined that, considering generally accepted industry standards, the marble slabs were negligently packed and loaded in the open-top container, which caused them to fall and injure Mr. Merced. Mem. of Law in Support of Gemstar Canada's Mot. for Summ. J., Ex. E at 4. He concluded, "Gemstar should have instructed the packers and made them aware of what equipment was available to unload the bundles/slabs." Id. Given the evidence Mr. Merced has presented, this Court concludes that there are genuine issues of material fact pertaining to Gemstar's compliance with industry standards and its role in causing or increasing the risk of harm to Mr. Merced. These are questions for a jury to decide and, as such, the Court denies Gemstar's motion for summary judgment.

## CONCLUSION

The Court concludes that specific jurisdiction exists allowing the Court to exercise personal jurisdiction over Defendant Gemstar Canada, Inc. Furthermore, there are genuine issues of fact pertaining to Gemstar's role in causing or increasing the risk of harm to Plaintiff Carlos Merced. For these reasons, the Court denies Defendant Gemstar Canada, Inc.'s Motion for Summary Judgment. An appropriate Order follows.