**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS MERCED | : | |
| | : | Civil Action No.: 10-CV-3054 |
| Plaintiff | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| | : | |
| GEMSTAR GROUP, INC., ET AL. | : | |
| | : | |
| Defendants | : | |

**PLAINTIFF'S TRIAL MEMORANDUM**

### I.    DETAILED FACTUAL SUMMARY OF PLAINTIFF'S CONTENTIONS.

**1.  Plaintiff's Age**

Plaintiff, Carlos Merced, was born on July 28, 1966.  He is currently 48 years old.

**2.  Date of incident**

December 31, 2008.

**3.  Nature of the incident**

Plaintiff, Carlos Merced, suffered serious and permanent personal injuries when marble slabs weighing thousands of pounds collapsed and crushed his leg on December 31, 2008 in Philadelphia, Pennsylvania.  The marble slabs had been improperly and unsafely packed inside a shipping container that had been delivered to Mr. Merced's place of employment.  Mr. Merced suffered extensive injuries including a grade I open tibial fracture requiring internal fixation surgery.  See X-ray images of Mr. Merced's injuries attached hereto as **Exhibit "1"**.

Defendants, Margraf S.P.A., Margraf Tiles, S.R.L., and/or Linea Marmo, S.P.A. (hereinafter collectively referred to as "Margraf") are Italian corporations that sold and physically packed and secured the subject marble slabs in the shipping container.

Defendant Gemstar Canada, Inc. (hereinafter "Gemstar") was the broker that directly contracted with Plaintiff's employer, Belfi Brothers, for the sale and shipment of the marble slabs at issue.

Plaintiff's employer, Belfi Brothers, is not a party to this case.

### 4.  Jurisdiction in the Eastern District is proper

Where a federal court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, the federal district court may assert personal jurisdiction over a non-resident of the state in which the court sits to the extent authorized by that state's law.  AlliedBarton Sec. Servs., LLC v. Onyx on the Bay, 2009 U.S. Dist. LEXIS 117903 (citing Fisher v. Teva PFC SRL, No. 05-4238, 212 Fed. Appx. 72, 2006 U.S. App. LEXIS 31741, 4-5 (3d Cir. Dec. 22, 2006) (citing Provident Nat'l Bank, 819 F.2d at 436).  In Pennsylvania, the long-arm statute provides jurisdiction over a person for causes of action arising from that person transacting business in the state.  The Pennsylvania Long-Arm Statute is codified as 42 Pa. C.S.A. § 5322.

The Court has ruled via an Order and opinion dated December 2, 2011 that Margraf and Gemstar are subject to personal jurisdiction in Pennsylvania.  The Court, citing, Shaffer v. South State Mach., 1997 U,S. Dist. LEXIS 220223, held that "contracting with the Pennsylvania corporation, coupled with shipment of a product directly to Pennsylvania, is sufficient contact with this forum so as to exercise jurisdiction over a claim stemming from that precise product. Contracting with a Pennsylvania company may fairly be interpreted as purposefully availing oneself of the privilege of conducting business in Pennsylvania, thereby invoking the benefits and protections of Pennsylvania's laws." Id. at *6-*7.

Accordingly, jurisdiction and venue are proper.

**5.  Margraf was negligent and careless in improperly and unsafely packing the marble slabs that fell and crushed Plaintiff's leg**

Margraf negligently packed the marble slabs inside the shipping container in Italy. Defendant Margraf packed the slabs in a "partial container," meaning that the shipping container was only partially filled.  The Margraf defendants knew that the shipment was being sent to Belfi Brothers in Philadelphia.

The Margraf defendants packed the marble slabs in two large bundles of fourteen (14) slabs each.  The size of these slabs created enormous pressure on the wood used by Margraf to secure the slabs.  Furthermore, Margraf failed to lean the slabs toward the outside of the container and failed to provide wire or other materials to secure the slabs and packing to the sides of the container at the time it was packed.

Margraf also failed to provide any warnings or instructions of any kind as to how to remove the slabs from this packaging or what equipment was necessary to safely remove the slabs. Margraf made no effort whatsoever to determine or ask what type of equipment Plaintiff's employer had available to remove the slabs from the container.

Plaintiff's liability expert, Frederick M. Hueston Ph.D., opined that defendant Margraf failed to properly pack the marble slabs.  Dr. Hueston, an expert in the stone industry, provided a report that states in part:

> **The proper and acceptable method for packing slabs in a container would have been to use cross bracing so that the individual bundles would support the weight of the stone. In a partial container, the bundles should have been packed with a lean toward the side of the container or bundled with a lean inside the bundle. The bundles should have also been secured to the container with the proper gauge wire to prevent falling. The bundles should have also been packed and loaded in such a way that each bundle could be removed without the remaining bundles falling over. In addition screws instead of nails should have been used. The maximum number of slabs per bundle**

**should be 10. More than 10 slabs to a bundle would require a crane to remove. The packer should have been aware of the equipment available to unload bundles.**

**Based on my qualifications and safety policies set by OSHA, The Marble Institute of America and with a reasonable degree of certainty considering generally accepted industry practices it is clear that those responsible for packing and loading the container were negligent in the loading and packing of stone slabs which caused them to fall resulting in the Mr. Merced's injuries for the foregoing reasons. Also Gemstar should have instructed the packers and made them aware of what equipment was available to unload the bundles/slabs.**

See **Exhibit "2,"** liability report and curriculum vitae of stone industry and forensic expert

Frederick M. Hueston Ph.D., including the conclusions on page 3 of Dr. Hueston's report.



*Figure 1 – photo showing how the slabs collapsed inward.  Plaintiff's expert has explained that the slabs should have been packed leaning toward the outside of the container, which would prevent them from collapsing in this manner when unpacked.*

Simply stated, Margraf improperly packed the slabs that were being shipped to

Philadelphia.  Margraf did not provide a single instruction or warning regarding the danger posed

by the way the slabs were packed and did nothing to ensure that the customer had the equipment

necessary to unload the slabs.  The slabs were unsafely packed, and instead of being angled toward the outside walls of the container, they were packed in such a way that they would collapse inward while being unloaded.  Accordingly, when the bundles arrived and were being unloaded the slabs collapsed and crushed Plaintiff's leg inside the container, causing massive injuries.

Margraf is liable for this accident.

### 6.  Margraf had never packed a shipping container in this way

Email correspondence Margraf sent to co-defendant Gemstar confirms that Margraf had never secured marble in the way it was being shipped to Philadelphia in this shipment.  The email dated December 3, 2010 from Margraf to Gemstar stated:

> As already explained on the phone, we will load and fix the material in best and secure way possible but any way, **we cannot guarantee you that material will arrive at destination in perfect safe conditions.**  We never loaded a container in this way and so we underline that **we will not be responsible for any damage that may be occurred to material.**

See **Exhibit "3,"** email from defendant Margraf to defendant Gemstar.   (Emphasis original).

Clearly, from Margraf's own email it is clear they never packed a shipping container in this way before this date.  The shipment was unsafe and should not have been packed this way.

### 7.  Gemstar failed to provide any warnings to Plaintiff

Gemstar was aware prior to shipment of the slabs to Philadelphia that the marble slabs were not sufficiently and safely packaged in the shipping container.  Gemstar also knew or should have known that the way the marble slabs were packed constituted a hazard to workers, including Plaintiff.  Gemstar further knew or should have known that Plaintiff's employer did not own the necessary equipment to safely remove the marble slabs from the shipping container.

Despite moving defendant's knowledge of these hazardous conditions, Gemstar did not notify Plaintiff or his employer of the hazards created by the way these slabs were packed prior to the arrival in Philadelphia.

Gemstar failed to warn Plaintiff of Margraf's concerns that slabs had never been packed like this before and failed to warn Plaintiff of the hazards of the shipment.  Defendant Gemstar further failed to inform Plaintiff as to what equipment was needed to remove the slabs from the packing and shipping container.

The email correspondence to Gemstar from Margraf specifically notified Gemstar that Margraf had never secured marble in the way it was being shipped to Philadelphia and that Margraf could not guarantee the marble would be in a safe condition.  See **Exhibit "3."** (Emphasis original).

Gemstar's failures violated industry standards.  Plaintiff's liability expert, Dr. Fred Hueston, has so opined and has so testified.  See **Exhibit "2,"** liability report and curriculum vitae of stone industry and forensic expert Frederick M. Hueston Ph.D., including the conclusions on page 3 of Dr. Hueston's report.

Dr. Hueston testified that Gemstar failed to abide by its duties under industry standards and safe practices.  By example, Dr. Hueston testified that:

> Q.     This question is more for Gemstar as opposed to Margraf.  I have a question about the brokers.  Mr. Tasich asked you whether you rely upon a broker to supply an unloading plan when you receive a shipment.  I believe that you said that you don't rely upon the broker to provide an unloading plan per se.  Is there anything else that you rely upon in the industry in regard to any aspect of unloading the product?
>
> A.     Other than basically what we discussed.  It should be packaged in a way or at least the broker should instruct the exporter to pack it in such a way that it can be unloaded safely.

Q.     If a broker had seen photographs like in this situation of materials or stone slabs that had been packed and the broker had any safety concerns what would you expect them to do based upon your experience?

MS. DONAHUE:        Objection.

THE WITNESS:       I would expect them to notify the fabricator [Belfi Brothers] in this case right away.

BY MR. MATTIACCI:

Q.     Are you aware of any evidence in this case that Gemstar notified anyone at Belfi Brothers about safety concerns that Gemstar had regarding the way that these were packaged?

MS. DONAHUE:        Objection.

THE WITNESS:       I didn't see anything concerning that, no.

See **Exhibit "4,"** Deposition of liability expert Frederick M. Hueston Ph.D., at Page 119, line 3 through page 120, line 5.  See also, Page 115, line 15 through Page 117, line 23.

Despite this information from Margraf, defendant Gemstar failed to warn Plaintiff or Plaintiff's employer of any risk due to the packaging and shipment of the marble, which collapsed upon receipt in Philadelphia and crushed Plaintiff's leg.

Plaintiff's expert Dr. Hueston also opined and testified that moving defendant Gemstar, as the broker, failed to adequately notify anyone at Belfi Brothers **ahead of time** as to how this shipment was packed and what equipment would be needed to safely unload it.  Dr. Hueston said:

Q.     Are you aware of any evidence in this case that Gemstar notified anyone at Belfi Brothers about safety concerns that Gemstar had regarding the way that these were packaged?

MS. DONAHUE:        Objection.

THE WITNESS:       I didn't see anything concerning that, no.

See **Exhibit "4,"** at Page 119, line 3 through page 120, line 5.  See also, Page 115, line 15 through Page 117, line 23.

Plaintiff has provided expert testimony and extensive facts through discovery to prove that Gemstar knew or should have known of the unsafe condition of the marble slabs before they were shipped and failed to adequately warn Plaintiff and his employer.

**8.  The defendants did not email photographs of the shipment to Belfi Brothers or to Plaintiff before its arrival in Philadelphia**

Margraf and Gemstar have alleged that photographs of the shipment were emailed to Belfi Brothers and/or shown to Plaintiff Carlos Merced prior to the incident.  However, despite producing voluminous emails in discovery there has not been a single email produced by any part showing that photographs were emailed to Belfi Brothers or to Plaintiff.

Defendants' own proffered expert, Jeff Lupica, testified that he has not seen any email that was sent from Gemstar to Belfi Brothers that attached photographs.  Defendants' own proffered expert has no documents that corroborate defendants' unfounded argument that photographs were sent by Gemstar to Belfi Brothers.  See **Exhibit "5,"** Deposition of defense expert Jeff Lupica, at Page 112, line 2 through 17.

## II.   ITEMIZED DAMAGES

Carlos Merced suffered permanent injuries that continue to affect his daily life. He has also suffered significant economic damages.  He should be compensated for the following separate damage awards:

1.    Past and Future Medical Expenses;
2.    Past and Future Loss of Earning Capacity;
3.    Past and Future Pain and Suffering;
4.    Past and Future Loss of Life's Pleasures;
5.    Embarrassment and Humiliation; and
6.    Scarring and disfigurement.

1.  **PAST AND FUTURE MEDICAL EXPENSES**

Mr. Merced's medical bills are significant.  To date, the amount paid to date by his worker's

compensation carrier is in excess of **$257,242.08** for his medical treatment as of December 5, 2014.

See **Exhibit "6,"** worker's compensation lien ledger.

2.  **PAST AND FUTURE LOSS OF EARNING CAPACITY**

At the time of injury Carlos Merced was 42 years of age and is presently 48 years old.  He

has an average life expectancy of an additional 30 years.  At the time of the accident, Mr. Merced

was a shop foreman with Belfi Brothers.  He has been employed as a machine operator since 2001

and had been a shop foreman since approximately 2005.

Mr. Merced missed significant time from work after his leg was crushed and then returned

only part time in the second half of 2009, eventually working full time but with restrictions.

Economic expert Andrew C. Verzilli has opined that Mr. Merced's past lost wages for the time he

was out of work was approximately **$25,242**.  See **Exhibit "7,"** report of Andrew C. Verzilli,

M.B.A.

Mr. Merced's return to work in later in 2009 was only been possible because of significant

accommodations provided to Mr. Merced by his employer.  For example, since returning to work

Mr. Merced's job duties were restricted, he spends a great deal of his time off of his feet, and he

limits the work that he does on his feet to short periods of time, typically on his feet for no more

than 15 minutes before needing to sit down.

According to plaintiff's vocational expert, Mark Lukas Ed.D., should Mr. Merced be

unable to meet the physical demands of his employment or if his employer does not provide

ongoing accommodations, he will suffer significant impairment of his earning capacity.  Dr. Lukas

noted Mr. Merced's pre-injury earnings as within the range of $45,600.00 to $59,200.00.  See

**Exhibit "8,"** Report of Mark Lukas, Ed.D.  However, his post-injury earning capacity is reduced to $20,800 to $31,200 annually.  This constitutes a loss in earning capacity from $24,000.00 to $28,000.00 annually.  See **Exhibit "8,"** at page 8.

Should Mr. Merced be unable to continue his duties as a shop foreman, economist Andrew Verzilli has opined that Mr. Merced's total future loss of earnings ranges from **$565,214 to $674,362**.  See **Exhibit "7,"** at page 4.

To date, a worker's compensation carrier has paid **$30,230.41** in indemnity payments for Mr. Merced's past lost wages to date.  See **Exhibit "6."**

**The total worker's compensation lien is $ 287,472.49 as of December 5, 2014.**

### 3.     PAST AND FUTURE PAIN AND SUFFERING

Mr. Merced's leg was trapped beneath thousands of pounds of marble slabs in the incident. It took several co-workers several minutes to pry the slabs up just enough to allow Mr. Merced's leg to be pulled out from beneath the slabs.  While they were attempting to do this, Mr. Merced was screaming in pain and begging for help.

His leg required emergency surgery.  Dr. Jennifer Taniguchi, Mr. Merced was diagnosed as having a grade I open left tibia shaft fracture.  Dr. Taniguchi performed the internal fixation surgery and implanted extensive hardware in his lower leg.  Since the initial surgery he has required ongoing therapy, pain management, and the use of various assistive devices.  He subsequently developed hardware irritation and underwent removal of three screws from his left tibial nail. He was also diagnosed with left ankle tendonitis, degenerative joint disease as well as neuroma. See **Exhibit "9,"** report of Jennifer Taniguchi, M.D.

Mr. Merced feels pain and discomfort every day.  Every single aspect of Mr. Merced's life has been affected by his injuries.  He has difficulty walking, running, or spending extended amounts of time on his feet.  His professional life has been significantly impacted and if not for the accommodations from his employer he would be unable to perform the physical requirements of his job.  His personal life has been similarly limited.

A functional capacity exam performed by Margaret E. Flynn, M.S., P.T. at Advanced Diagnostics determined that Mr. Merced is limited to occasional lifting only of up to 20 pounds from all heights. He is limited to occasional walking, carrying up to 20 pounds, pushing, pulling, balancing, stooping, kneeling with support, and stair climbing with a handrail. He is unable to crouch. He is limited to 15 minutes at a time of static standing.  See **Exhibit "10,"** report of Margaret E. Flynn, M.S., P.T.

Mr. Merced is entitled to compensation for five and half years of past pain and suffering and 31 years of future pain and suffering.

### 4.    PAST AND FUTURE LOSS OF LIFE'S PLEASURES

Prior to December 31, 2008, Mr. Merced was an active, hard-working person who loved being outdoors.  He loved riding his motorcycle, biking through Pennypack Park, walking his dog, and physical sports like volleyball.  He can no longer do these activities and he has drastically reduced the time he can spend on his feet because of pain.

Mr. Merced sleeps with a guard over his leg to prevent it from being banged or struck during the night, otherwise he is unable to sleep because of pain.  It is rare that he has a single night of undisturbed sleep.

In spite of his serious injuries, he is determined to make the most of his life.  He tried to return to work as soon as he was physically able to stand, returning part time with accommodations. Now he works full time, but still requires accommodations to do his job.  Even so, he suffers from depression and a loss of the independence that once defined him.

 Mr. Merced is entitled to five and a half years of past pain and suffering and 31 years of future pain and suffering.

### 5.    <u>EMBARRASSMENT AND HUMILIATION</u>

Mr. Merced suffers from embarrassment and humiliation as a result of his limitations. Following the accident he required help from his girlfriend, Latisha Wilson, to perform even basic personal tasks.  He required assistance to get dressed, to get washed, in getting out of bed and caring for himself.

As Mr. Merced worked to overcome his injuries, he returned to work only to find that he cannot do his job as he did prior to the accident.  He still relies upon co-workers to assist him, to lift products that he can no longer lift, and he limits the time on his feet to periods of 15 minutes. While he appreciates the assistance, Mr. Merced longs to be the unrestricted and active person he was before the accident, rather than a permanently injured person requiring help from others to do his own job.

### 6.    <u>SCARRING AND DISFIGUREMENT</u>

Mr. Merced has been disfigured as a result of this accident.  His leg is significantly scarred from the injuries and surgeries he has required.  See the photos of Mr. Merced's leg collectively attached as **Exhibit "11."**

### III.      PLAINTIFF'S WITNESSES TO BE CALLED AT TRIAL.

Plaintiff expects to call the following witnesses to testify as part of his case in chief.

Plaintiff reserves the right to call any witness listed by Defendants as well as any rebuttal witnesses

as needed.

### A.      FACT AND LIABILITY WITNESSES

1. Plaintiff, Carlos Merced
   2127 McKinley Street
   Philadelphia, PA 19149

Plaintiff is expected to testify (without limitation) regarding the nature of the incident, the defective condition of the shipping container, rack system, and marble slabs that injured him; the facts involving the incident of December 31, 2008; lack of warnings and instructions provided to Plaintiff; the nature of his employment and experience; the nature and experience of Belfi Brothers; Plaintiff's injuries and medical treatment and bills before and after the incident; and, his physical, economic, emotional and other damages resulting from Defendants' conduct.

2. Alberto Tezza, designee of defendant Margraf, S.P.A. **(as on cross examination)**
   c/o Margraf, S.P.A.
   36072 Chiampo (VI) ITALY - Via Marmi, 3

Mr. Tezza, as sales director and corporate designee of defendant Margraf, S.P.A., is expected to testify (without limitation) regarding areas including his educational background, work history, experience, and all prior testimony; explanation, history and a description of the business of the Margraf defendants; identity of all persons at Margraf and Gemstar involved in the packing, sale, distribution, shipment and/or purchase of the marble slabs involved in Carlos Merced's accident; the contact and conversations between Gemstar and Margraf and Belfi Bros. with regard to the marble slabs involved in Carlos Merced's accident; all contact and conversations between Margraf and Gemstar and anyone at Belfi Brothers with regard to the marble slabs; Margraf's experience with the packing, sale, distribution, shipment and/or purchase of marble and stone slabs; OSHA; what Margraf and Gemstar did to identify what equipment Belfi Brothers had available to load or unload marble slabs; defendants' investigation into the facts and accident; post-accident contact and conversations between Gemstar and Margraf, Plaintiff and Belfi Bros. with regard to Carlos Merced's accident; the standards and/or regulations relied upon in the packing, sale, distribution, shipment and/or purchase of the marble slabs; all contract(s) or agreements of sale for this shipment; the design, manufacture and assembly of the wooden supports used to pack the subject marble slabs; lack of instructions and warnings given to Belfi Brothers or Plaintiff regarding the packing/unpacking of the subject marble slabs; lack of instructions and warnings provided by any other party regarding the packing/unpacking of the subject marble slabs; industry or legal regulations relating to the packing, sale, distribution, shipment and/or purchase of the marble slabs; certification of defendant's documents and discovery responses and pleadings, the

nature and purpose of each document turned over by defendant to any discovery request to date; and defendants' knowledge of Plaintiff's incident and injuries.

3. Franco Rossi **(as on cross examination)**
   Designee of defendant, Gemstar Canada, Inc.
   76 Coldspring Road, Klenburg,
   22 Ontario, Toronto

Mr. Rossi, as the corporate designee of defendant Gemstar Canada, Inc., is expected to testify (without limitation) regarding areas including his educational background, work history, experience, and all prior testimony; explanation, history and a description of the business of Gemstar; identity of all persons at Margraf and Gemstar involved in the packing, sale, distribution, shipment and/or purchase of the marble slabs involved in Carlos Merced's accident; the contact and conversations between Gemstar and Margraf and Belfi Bros. with regard to the marble slabs involved in Carlos Merced's accident; all contact and conversations between Margraf and Gemstar and anyone at Belfi Brothers with regard to the marble slabs; Gemstar's experience with the packing, sale, distribution, shipment and/or purchase of marble and stone slabs; OSHA; what Margraf and Gemstar did to identify what equipment Belfi Brothers had available to load or unload marble slabs; defendants' investigation into the facts and accident; post-accident contact and conversations between Gemstar and Margraf, Plaintiff and Belfi Bros. with regard to Carlos Merced's accident; the standards and/or regulations relied upon in the packing, sale, distribution, shipment and/or purchase of the marble slabs; all contract(s) or agreements of sale for this shipment; the design, manufacture and assembly of the wooden supports used to pack the subject marble slabs; lack of instructions and warnings given to Belfi Brothers or Plaintiff regarding the packing/unpacking of the subject marble slabs; lack of instructions and warnings provided by any other party regarding the packing/unpacking of the subject marble slabs; industry or legal regulations relating to the packing, sale, distribution, shipment and/or purchase of the marble slabs; certification of defendant's documents and discovery responses and pleadings, the nature and purpose of each document turned over by defendant to any discovery request to date; and defendants' knowledge of Plaintiff's incident and injuries.

4. Eliezer Ortiz Rodriguez
   800 Hilton Street
   Philadelphia, PA 19134

Mr. Rodriguez is expected to testify (without limitation) on areas including the nature of the incident, the defective condition of the shipping container, rack system, and marble slabs that injured Mr. Merced; the facts involving the incident of December 31, 2008; lack of warnings and instructions provided to Plaintiff; the nature of his employment and experience; the nature and experience of Belfi Brothers and Carlos Merced; his knowledge of Plaintiff's physical, economic, emotional and other damages resulting from Defendants' conduct.

5. Jose Ortiz Rodriguez
   2809 N. Water Street
   Philadelphia, PA 19134

Mr. Rodriguez is expected to testify (without limitation) on areas including the nature of the incident, the defective condition of the shipping container, rack system, and marble slabs that injured Mr. Merced; the facts involving the incident of December 31, 2008; lack of warnings and instructions provided to Plaintiff; the nature of his employment and experience; the nature and experience of Belfi Brothers and Carlos Merced; his knowledge of Plaintiff's physical, economic, emotional and other damages resulting from Defendants' conduct.

6. Latisha Wilson
   2127 McKinley Street
   Philadelphia, PA 19149

Ms. Wilson is expected to testify regarding Plaintiff's injuries and medical treatment and before and after the incident, the impact that the injuries and incident have had on Plaintiff Carlos Merced; and about Plaintiff's physical, economic, emotional and other damages resulting from Defendants' conduct.

7. Robert Rounay
   845 Kulp Road
   Harleysville, PA 19438

Mr. Rounay is expected to testify (without limitation) on areas including the nature of the incident, the defective condition of the shipping container, rack system, and marble slabs that injured Mr. Merced; the facts involving the incident of December 31, 2008; lack of warnings and instructions provided with the shipment; the nature of his employment and experience; the nature and experience of Belfi Brothers and of Carlos Merced; his knowledge of Plaintiff's physical, economic, emotional and other damages resulting from Defendants' conduct; accommodations provided to Plaintiff after the incident; any contact and conversations between Gemstar, Margraf and Belfi Bros. with regard to the marble slabs involved in Carlos Merced's accident; all contact and conversations between Margraf and Gemstar and anyone at Belfi Brothers with regard to the marble slabs; Margraf's experience with the packing, sale, distribution, shipment and/or purchase of marble and stone slabs.

8. Art Belfi
   4310 Josephine Street
   Philadelphia, PA 19124

Mr. Belfi is expected to testify (without limitation) on areas including the nature of the incident, the defective condition of the shipping container, rack system, and marble slabs that injured Mr. Merced; the facts involving the incident of December 31, 2008; lack of warnings and instructions provided with the shipment; the nature of his employment and experience; the nature and experience of Belfi Brothers and of Carlos Merced; his knowledge of Plaintiff's physical, economic, emotional and other damages resulting from Defendants' conduct; accommodations

provided to Plaintiff after the incident; any contact and conversations between Gemstar, Margraf and Belfi Bros. with regard to the marble slabs involved in Carlos Merced's accident; all contact and conversations between Margraf and Gemstar and anyone at Belfi Brothers with regard to the marble slabs; Margraf's experience with the packing, sale, distribution, shipment and/or purchase of marble and stone slabs.

    9.  James Ingram
        4310 Josephine Street
        Philadelphia, PA 19124

    Mr. Ingram is expected to testify (without limitation) on areas including the nature of the incident, the defective condition of the shipping container, rack system, and marble slabs that injured Mr. Merced; the facts involving the incident of December 31, 2008; lack of warnings and instructions provided with the shipment; the nature of his employment and experience; the nature and experience of Belfi Brothers and of Carlos Merced; his knowledge of Plaintiff's physical, economic, emotional and other damages resulting from Defendants' conduct; accommodations provided to Plaintiff after the incident; any contact and conversations between Gemstar, Margraf and Belfi Bros. with regard to the marble slabs involved in Carlos Merced's accident; all contact and conversations between Margraf and Gemstar and anyone at Belfi Brothers with regard to the marble slabs; Margraf's experience with the packing, sale, distribution, shipment and/or purchase of marble and stone slabs.

    10.  Mark Klemmer
         415 Bonnie Lane
         Lansdale, PA 19446

    Mr. Klemmer is expected to testify (without limitation) on areas including the nature of the incident, the defective condition of the shipping container, rack system, and marble slabs that injured Mr. Merced; the facts involving the incident of December 31, 2008; lack of warnings and instructions provided with the shipment; the nature of his employment and experience; the nature and experience of Belfi Brothers and of Carlos Merced; his knowledge of Plaintiff's physical, economic, emotional and other damages resulting from Defendants' conduct; accommodations provided to Plaintiff after the incident; any contact and conversations between Gemstar, Margraf and Belfi Bros. with regard to the marble slabs involved in Carlos Merced's accident; all contact and conversations between Margraf and Gemstar and anyone at Belfi Brothers with regard to the marble slabs; Margraf's experience with the packing, sale, distribution, shipment and/or purchase of marble and stone slabs.

11.     Victoria Newbold, CRNP
        Aria Health Pain Management
        10800 Knights Road, Suite 304
        Philadelphia, PA  19114

Victoria Newbold, CRNP is a treating physician and is expected to testify in areas including the nature, extent and causation of Plaintiff's injuries, including past and future treatment, medical bills, limitations, and damages arising from the incident.

12.     Barry Schnall, MS, MD
        Rydal West
        Suite 111
        1610 The Fairway
        Jenkintown, PA 190446-1614

Barry Schnall, MS, MD is treating physician and is expected to testify in areas including the nature, extent and causation of Plaintiff's injuries, including past and future treatment, medical bills, limitations, and damages arising from the incident.

13.     Thomas P. Zavitsanos, M.D.
        Aria Health Pain Management
        10800 Knights Road, Suite 304
        Philadelphia, PA  19114

Thomas P. Zavitsanos, MD a treating physician and is expected to testify in areas including the nature, extent and causation of Plaintiff's injuries, including past and future treatment, medical bills, limitations, and damages arising from the incident.

**B.      PLAINTIFF'S EXPERT WITNESSES**

1.     Jennifer Taniguchi, M.D.
       3110 Grant Ave.
       Philadelphia, PA 19114

Dr. Taniguchi is a treating surgeon of Plaintiff and is expected to testify (without limitation) in areas including her education, training and experience; her professional certifications, degrees, and memberships; her qualifications as an orthopedic surgeon and medical expert; the nature and cause of Plaintiff's injuries arising from the incident; her treatment of Plaintiff; her diagnoses and prognoses for Plaintiff; the nature and extent of Plaintiff's past and future treatment, care, bills and physical limitations; authentication of Plaintiff's treatment records, bills and diagnostic tests and films; Plaintiff's work limitations; scarring and disfigurement; the reasonableness and necessity of Plaintiff's treatment and bills to date; and the opinions and analyses set forth in her report and any supplemental reports submitted prior to trial.

      2.  Frederick M. Hueston, Ph.D.
          740 Nelda Ave.
          Palm Bay, FL 32907

Dr. Hueston is expected to testify (without limitation) in areas including his education, training and experience; his professional certifications, degrees, and memberships; his qualifications as an expert to speak on the liability of the defendants; the opinions and analyses set forth in his report, deposition and any supplemental reports submitted prior to trial; his opinions regarding the liability of the parties arising from this incident; his investigation into the facts of the incident; accepted industry standards and procedures; negligence of the defendants; alternate designs, warnings, instructions and procedures that should have been used for the subject shipment.

      3.  Mark Lukas, Ed.D.
          27 West Third Street
          Media, PA  19063

Dr. Lukas is expected to testify (without limitation) in areas including his education, training and experience; his professional certifications, degrees, and memberships; his qualifications as a vocational expert to speak on the economic and vocational consequences of Plaintiff's employment due to injuries and limitations sustained in the incident; the opinions and analyses set forth in his report and any supplemental reports submitted prior to trial, including the present value of the economic and vocational consequences of Plaintiff's lost earnings and lost earning capacity; and his opinions regarding Plaintiff's historical and future economic losses.

      4.  Andrew C. Verzilli, M.B.A.
          Verzilli & Verzilli and Consultants, Inc.
          411 North Broad Street
          Lansdale, PA  19446

Mr. Verzilli is expected to testify (without limitation) in areas including his education, training and experience; his professional certifications, degrees, and memberships; his qualifications as an economic expert to speak on the economic consequences due to Plaintiff's injuries and limitations sustained in the incident; the opinions and analyses set forth in his report and any supplemental reports submitted prior to trial, including the value of the economic and damages and Plaintiff's lost earnings and lost earning capacity, including his opinions regarding Plaintiff's historical and future economic losses in the amount of $25,242 in past lost earnings and $539,972 to $649,120 in future lost earnings as set forth in his report.

5.  Margaret E. Flynn, M.P.T.
    2487-89 Grant Avenue
    Philadelphia, PA 19114

Ms. Flynn is expected to testify (without limitation) in areas including her education, training and experience; her professional certifications, degrees, and memberships; her qualifications as an physical therapist and functional capacity examiner; the nature and extent of Plaintiff's physical limitations and abilities; her physical examination and testing of Plaintiff; and the opinions and analyses set forth in her report and any supplemental reports submitted prior to trial.

## C.    CURRICULUM VITAE OF PLAINTIFF'S EXPERTS

The curriculum vitae of Dr. Taniguchi, Dr. Hueston, Dr. Lukas, Mr. Verzilli, and Ms. Flynn are attached.

## D.    DESIGNATION OF VIDEOTAPED TRIAL TESTIMONY

At this time, Dr. Taniguichi is expected to provide videotaped trial testimony. Plaintiff reserves the right to call Dr. Schnall and Dr. Zavitsanos by video.  The remaining experts and witnesses are expected to testify in-person during the trial.  Plaintiff reserves the right to supplement this designation to the extent any other experts are required to testify via video.

## E.    DESIGNATION OF DEPOSITION TESTIMONY TO BE OFFERED
         AT TRIAL

In addition to calling the individuals identified in Sections B and C above as witnesses at trial, Plaintiff reserves the right pursuant to F.R.Civ.P. 32(a) to read into evidence as part of Plaintiff's case-in-chief the following excerpts of the transcripts of their deposition testimony. Plaintiff also reserves the right to use any deposition testimony (not designated herein) for purposes of impeachment and rebuttal.

Please note that, unless otherwise noted, the read in will not include objections from Defendants' counsel and dialogue surrounding same, or dialogue with or statements from the Court reporter.

**Deposition of Alberto Tezza**

6, 20 through 7, 1
7, 14 through 25
9, 7 through 20
10, 17 through 22
11, line 16 through 12, 12
14, 1 through 9
20, 14 through 21, 14
22, 13 through 23, 3

23, 18 through 24
24, 4 through 19
24, 24 through 26, 4
26, 16 through 28, 20
29, 11 through 30, 1
31, 6 through 25
35, 2 through 25
38, 14 through 40, 5
44, 3 through 14
44, 16 through 45, 6
52, 10 through 53, 1
54, 18 through 24
56, 9 through 25
59, 5 through 11
70, lines 4 through 21
79, lines 9 through 19
100, 2 through 5
109. 3 through 13
112, 10 through 13
118, 6 through 16
121, 20 through 122, 17

**Deposition of Frank Rossi**

12, 23 through 13, 2
14, 13 through 23
15, 7 through 15
17, 19 through 18, 6
19, 2 through 20, 9
39, 20 through 40, 7
40, 20 through 41, 15
44, 9 through 45, 9
46, 11 through 15
48, 4 through 18
48, 19 through 49, 1
50, 13 through 51, 14
51, 15 through 53, 16
53, 17 through 22
61, 9 through 63, 6
65, 4 through 21
70, 12 through 73, 13
74, 6 through 9
75, 20 through 76, 15
76, 22 through 77, 1

**Deposition of Robert Rounay**

11, 1 through 12
18, 6 through 19, 4
28, 22 through 29, 22
29, 23 through 31, 16
47, 17 through 48, 25
79, 5 through 18
81, 2 through 83, 11

**Deposition of Eliezer Ortiz**

11, 22 through 12, 9
13, 16 through 14, 11
16, 15 through 17
20, 17 through 24
23, 9 through 19

**Jose Ortiz Rodriguez**

50, 11 through 52, 5
52, 7 through 11
69, 21 through 70, 16
78, 19 through 79, 9
90, 24 through 91, 10
91, 20 through 92, 7
106, 24 through 107, 13
109, 2 through 8
109, 13 through 18
112, 6 through 113, 18

**Art Belfi**

50, 10 through 24
66, 5 through 67, 16
73, 16 through 25

## F.   PLAINTIFF'S PROPOSED EXHIBITS

P1.   Report, supplements and exhibits and CV of Jennifer Taniguchi, M.D.

P2.   Report, supplements and exhibits and CV of Mark Lukas, Ed.D.

P3.   Report, supplements and exhibits and CV of Margaret Flynn, MPT

P4.   Report, supplements and exhibits and CV of Andrew C. Verzilli, MBA

P5.    Report, supplements and exhibits and CV of Frederick Hueston, Ph.D.

P6.    Reports, records and bills from Aria Health System

P7.    Reports, records and bills from Aria Health Pain Management

P8.    Reports, records and bills from Dr. Jennifer Taniguchi and the Muscle, Bone & Joint Center

P9.    Reports, records and bills from NovaCare Rehabilitation

P10.   Reports, records and bills from Dr. Barry Schnall

P11.   Reports, records and bills from Albert Einstein Health Network

P12.   Reports, records and bills from Gene Shaffer, M.D.

P13.   Reports, records and bills from Philadelphia EMS

P14.   Reports, records and bills from Aria Diagnostics

P15.   Videotaped trial testimony and exhibits of Jennifer Taniguchi, M.D.

P16.   Videotaped trial testimony and exhibits of Victoria Newbold, CRNP

P17.   Videotaped trial testimony and exhibits of Jeffrey T. Truitt, M.D.

P18.   Videotaped trial testimony and exhibits of Thomas P. Zavitsanos, M.D.

P19.   Videotaped trial testimony and exhibits of Barry Schnall, M.S., M.D.

P20.   X-ray films and diagnostic films

P21.   Photographs taken by OSHA

P22.   Photographs of Plaintiff

P23.   Photographs of shipping container and slabs taken by Margraf

P24.   Workers Compensation lien documents

P25.   Tax Returns

P26.   Wage and fringe benefits documents

P27.   Gemstar Invoices to Belfi Brothers

P28.    Margraf Invoices to Gemstar

P29.    Emails disclosed in discovery from Gemstar, Margraf, Belfi

P30.    OSHA Report and safety manual

P31.    Materials Handling with Bundles document (English) provided by Margraf

P32.    Gemstar's Initial Disclosures

P33.    Margraf's Initial Disclosures

P34.    Plaintiff's Initial Disclosures

P35.    Initial Disclosures of former defendant SDS Global

P36.    Initial Disclosures of former defendant ZIM

P37.    Plaintiff's Complaint

P38.    Defendant Margraf's Answer to Complaint

P39.    Defendant Gemstar's Answer to Complaint

P40.    Defendant ZIM's Answer to Complaint

P41.    Defendant SDS's Answer to Complaint

P42.    SDS's Interrogatories to Plaintiff

P43.    SDS's Request for Production of Documents to Plaintiff

P44.    SDS's Request for Production of Documents to ZIM

P45.    SDS's Request for Production of Documents to Gemstar

P46.    SDS's Request for Production of Documents to Margraf

P47.    Plaintiff's Interrogatories to ZIM

P48.    Plaintiff's Interrogatories to SDS

P49.    Plaintiff's Interrogatories to Margraf

P50.    Plaintiff's Interrogatories to Gemstar

P51.   Plaintiff's Request for Production of Documents to all Defendants

P52.   Margraf's Answers and Objections to Plaintiff's Interrogatories

P53.   Margraf's Answers and Objections to Plaintiff's Request for Production of Documents

P54.   Gemstar's Responses to Plaintiff's Interrogatories

P55.   Gemstar's Responses to Plaintiff's Request for Production of Documents

P56.   SDS's Answers to Plaintiff's Interrogatories

P57.   SDS's Answers to Plaintiff's Request for Production of Documents

P58.   ZIM's Reply to Plaintiff's Interrogatories

P59.   ZIM's Reply to Plaintiff's Request for Production of Documents

P60.   Gemstar's Interrogatories to Plaintiff

P61.   Gemstar's Request for Production of Documents to Plaintiff

P62.   Plaintiff's Answers to Gemstar's Interrogatories of Gemstar

P63.   Plaintiff's Response to Gemstar's Request for Production of Documents

P64.   ZIM's Interrogatories to Margraf

P65.   ZIM's Request for Production of Documents to Margraf

P66.   Margraf's Answers and Objections to ZIM's Interrogatories

P67.   Margraf's Answers and Objections to ZIM's Request for Production of Documents

P68.   Margraf's Answers and Objections to SDS's Request for Production of Documents

P69.   Deposition transcript and exhibits of Alberto Tezza

P70.   Deposition transcript and exhibits of Franco Rossi

P71.   Deposition transcript and exhibits of Jose Rodriguez

P72.   Deposition transcript and exhibits of Eliezer Ortiz Rodriguez

P73.   Deposition transcript and exhibits of Carlos Merced

P74.   Deposition transcript and exhibits of Art Belfi

P75.   Deposition transcript and exhibits of Mark Klemmer

P76.   Deposition transcript and exhibits of Robert Rounay

P77.   Deposition transcript and exhibits of Frederick M. Hueston Ph.D.

P78.   Deposition transcript and exhibits of Jeff Lupica

P79.   Report, supplements and exhibits and CV of Jennifer Taniguchi, M.D.

P80.   Report, supplements and exhibits and CV of Frederick M. Hueston Ph.D.

P81.   Report, supplements and exhibits and CV of Andrew C. Verzilli

P82.   Report, supplements and exhibits and CV of Mark Lukas, Ed.D.

P83.   Report, supplements and exhibits and CV of Margaret E. Flynn, MPT

P84.   Report, supplements and exhibits and CV of Steven Raikin, M.D.

P85.   Report, supplements and exhibits and CV of Jeff Lupica

P86.   Subpoena records from James D. Morrissey

P87.   Deposition transcript, exhibits and videotape of Plaintiffs' experts/treating physicians

P88.   Deposition transcript, exhibits and videotapes of Defendants' experts

P89.   Life Tables

P90.   Anatomical Models of foot and leg

P91.   3D model of the leg and foot

P92.   Medical chart/poster of the leg and foot

P93.   Surgical diagrams

P94.   Any and all pleadings

P95.   Any and all responses to pleadings

P96.    Any and all Motions

P97.    Any and all Responses to Motions

P98.    Any and all Subpoenas

P99.    Any and all Responses to Subpoenas

P100.   Discovery requests of all parties including all Interrogatories and requests for Production of Documents and all disclosed documents

P101.   Responses of all parties to all discovery requests

P102.   MRI, X-ray, CT films and diagnostic films and reports

P103.   Diagrams of the foot

Plaintiffs reserve the right to utilize any evidence identified in defendants' pre-trial memoranda and to supplement this list of exhibits if and when new information or evidence becomes available up to and including at time of trial.

## G.      ESTIMATED TRIAL TIME

Approximately five days.

## H.      STIPULATIONS AND LEGAL ISSUES

### Plaintiff's Proposed Stipulations

1. Plaintiff was injured on December 31, 2008

2. Defendant Margraf physically packed the marble slabs in the shipping container

3. Defendant Gemstar was the broker for the sale of the marble slabs

4. Defendant Margraf did not angle the marble slabs to the outside walls of the container when the slabs were packed

5. Defendant Margraf did not use wire to secure the marble slabs inside the container

6. Defendant Margraf did not use an A-frame design to pack the slabs

7. Defendant Margraf did not provide the "Materials Handling With Bundles" document to Plaintiff at any time

8. Defendant Margraf did not provide the "Materials Handling With Bundles" document to anyone at Belfi Brothers at any time.

9. Defendant Margraf did not provide the "Materials Handling With Bundles" document to anyone at Gemstar at any time.

10. Margraf did not provide any warnings to Plaintiff with regard to the marble slabs.

11. Margraf did not provide any instructions to Plaintiff with regard to the marble slabs.

12. Gemstar did not provide any warnings to Plaintiff with regard to the marble slabs.

13. Gemstar did not provide any instructions to Plaintiff with regard to the marble slabs.

14. Margraf did not email any photographs of the marble slabs to anyone at Belfi Brothers prior to Mr. Merced's incident.

15. Margraf has not produced any emails showing Margraf emailed any photographs of the marble slabs to anyone at Belfi Brothers prior to Mr. Merced's incident.

16. Gemstar did not email any photographs of the marble slabs to anyone at Belfi Brothers prior to Mr. Merced's incident.

17. Gemstar has not produced any emails showing anyone at Gemstar emailed any photographs of the marble slabs to anyone at Belfi Brothers prior to Mr. Merced's incident.

18. Margraf emailed photographs of the marble slabs to Gemstar prior to Mr. Merced's incident.

19. Michela Dalla Pozza from Margraf emailed photos of the marble slabs and shipment to Carolyn Watson and Frank Ross of Gemstar on December 4, 2008.

20. Carolyn Watson and Frank Rossi of Gemstar did not email these photographs to anyone at Belfi Brothers prior to Mr. Merced's incident.

21. Plaintiff Carlos Merced suffered a grade 2 open tibia and fibular comminuted fracture in this incident.

22. Plaintiff Carlos Merced required surgery for the grade 2 open tibia and fibular comminuted fracture.

23. Plaintiff Carlos Merced has scarring as a result of his surgery.

24. Plaintiff Carlos Merced has developed a saphenous traumatic neuroma to the right lower extremity with persistent saphenous neuritis as a result of the incident.


Respectfully submitted,


By:  /s/ Sean M. McMonagle (312714)
       Sean M. McMonagle, Esquire
       John T. Dooley, Esquire
       Law Offices of John T. Dooley, P.C.
       5434 King Avenue @ Route 38 East
       Suite 202
       Pennsauken, NJ 08109
       (856) 488-9010 (Phone)
       (856) 488-9019 (Fax)

DATED:  October 16, 2015

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

CARLOS MERCED                                :
                                             :          Civil Action No.: 10-CV-3054
                              Plaintiff       :
              v.                             :          JURY TRIAL DEMANDED
                                             :
GEMSTAR GROUP, INC., ET AL.                  :
                                             :
                              Defendants      :

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Plaintiff's Trial Memorandum was filed with the Clerk of Court via e-filing and sent to the following via email:

Vlada Tasich, Esquire
Marshall Dennehey Warner Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103-4797
Attorney for Defendant, Gemstar Canada, Inc.

James F. Ryan, Esquire
Schwabenland & Ryan, P.C.
995 Old Eagle School Road, Suite 306
Wayne, PA  19087
Counsel for Defendants, Margraf, S.P.A.,
Linea Marmo, S.P.A., and Margraf Tiles SRL

Respectfully submitted,

By: /s/ Sean M. McMonagle (312714)
        Sean M. McMonagle, Esquire
        John T. Dooley, Esquire
        Law Offices of John T. Dooley, P.C.
        5434 King Avenue @ Route 38 East
        Suite 202
        Pennsauken, NJ 08109
        (856) 488-9010 (Phone)
        (856) 488-9019 (Fax)

DATED:  October 16, 2015